**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **ANITA ROBERTSON HULSE** | **CASE NO. 6:24-CV-01011 LEAD** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **ACADIAN AMBULANCE SERVICE INC** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

# MEMORANDUM RULING

Before the Court is Defendant Acadian Ambulance Service, Inc.'s Motion for Protective Order Regarding Plaintiffs' Rule 30(b)(6) Deposition Notice. (Rec. Doc. 88). Plaintiffs opposed the motion (Rec. Doc. 90), and Acadian replied (Rec. Doc. 94).

Plaintiffs filed this putative class action against Acadian following a data breach incident which occurred in June 2024. The Court established October 30, 2026, as the deadline for class-related discovery, with subsequent deadlines and a class certification hearing to be set at a later conference. (Rec. Doc. 82). Plaintiffs submitted a Notice of Rule 30(b)(6) Deposition to Acadian identifying sixteen topics for Acadian's corporate representative. (Rec. Doc. 88-3). Acadian seeks a protective order limiting the topics for its designated representative's testimony to topics relevant to the issue of class certification.

## I. <u>Scope of Discovery</u>

At this point, discovery is limited to class certification issues. At the preliminary certification stage, the Court must conduct a “rigorous analysis” to determine whether Plaintiffs meet the core prerequisites for class certification: “[I]t may be necessary for the court to probe behind the pleadings before coming to rest on the certification question, and that certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.” *Comcast Corp. v. Behrend*, 569 U.S. 27, 33, 133 S. Ct. 1426, 1432, 185 L. Ed. 2d 515 (2013) (Cleaned up; citation omitted)).

Plaintiffs seek certification under Rule 23(b)(3) and Rule 23(c)(4).

> A class may be certified under Rule 23(b)(3) only if it meets the four prerequisites found in Rule 23(a) and the two additional requirements found in Rule 23(b)(3). The four 23(a) prerequisites include (1) numerosity (a class so large that joinder of all members is impracticable); (2) commonality (questions of law or fact common to the class); (3) typicality (named parties’ claims or defenses are typical of the class); and (4) adequacy of representation (representatives will fairly and adequately protect the interests of the class).

*Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 623 (5th Cir. 1999), quoting *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 2245 (1997).

Rule 23(b)(3) additionally provides that, if the Rule 23(a) prerequisites are satisfied, a class action may be maintained “if the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods

for fairly and efficiently adjudicating the controversy." The Fifth Circuit has reduced the Rule 23(b)(3) analysis to two inquiries: predominance and superiority. *Chavez v. Plan Benefit Servs., Inc.,* 108 F.4th 297, 316 (5th Cir.), *cert. denied,* 145 S. Ct. 774, 220 L. Ed. 2d 274 (2024), citing *Mullen*, 186 F.3d at 626–29.

Rule 23(c)(4) provides: "When appropriate, an action may be brought or maintained as a class action with respect to particular issues." This "is a housekeeping rule that allows courts to sever the common issues for a class trial." *Castano v. Am. Tobacco Co.,* 84 F.3d 734, 745, n. 21 (5th Cir. 1996). The plaintiffs must still satisfy (b)(3)'s predominance requirement. *Id.*

The Court's "rigorous analysis" of whether certification is appropriate "will entail some overlap with the merits of the plaintiff's underlying claim, [because] the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351, 131 S. Ct. 2541, 2551–52 (2011). See also Fed. R. Civ. P. 23, Committee Note (2003):

> Although an evaluation of the probable outcome on the merits is not properly part of the certification decision, discovery in aid of the certification decision often includes information required to identify the nature of the issues that actually will be presented at trial. In this sense it is appropriate to conduct controlled discovery into the "merits," limited to those aspects relevant to making the certification decision on an informed basis. Active judicial supervision may be required to achieve the most effective balance that expedites an informed certification determination without forcing an artificial and ultimately

> wasteful division between "certification discovery" and "merits discovery."

*See also Divine v. Securix, LLC*, No. 1:23-CV-196-HSO-BWR, 2026 WL 1103279, at *4 (S.D. Miss. Apr. 23, 2026) ("[A]lthough class-related discovery and merits-related discovery are in some ways distinct, there is significant overlap due to the 'rigorous analysis' required for class certification.").

Of course, overarching these considerations is Rule 26(b)'s permissible scope of discovery: "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

Thus, at the certification discovery phase, Plaintiff is entitled to discovery relevant to numerosity, commonality, typicality, adequacy of representation, predominance, and superiority, some of which will inevitably overlap with the merits of their claims. The Court must determine whether compelled disclosure of overlapping merits discovery at the certification stage outweighs the burdens of production or is otherwise unwarranted.

## II. Topics for Acadian's Rule 30(b)(6) Deposition

Acadian states that it has produced documents and does not object to its corporate representative testifying regarding the facts of the breach, the nature and extent of information involved, the number of affected individuals, and notifications to and with affected persons and government authorities. Acadian challenges the following topics.

- **Topic 1** seeks data security measures in place prior to and throughout the breach. The Court agrees this is overly broad in that it seeks information regarding measures in place for some undefined time period prior to the breach. Acadian submitted a declaration of its senior IT director, Benjamin Blanchard, who attests that to provide an adequate response to Topic 1 would require 600 to 1,000 hours of work by dozens of personnel and four to six months to complete. (Rec. Doc. 88-7, ¶3). Although data security measures in place at the time of breach are ultimately a merits topic, such information may assist with the certification inquiry and is thus permissible. As Plaintiff argues, whether Acadian's security safeguards were common across servers and datasets (and thus whether individuals' information was compromised in the same ways) goes to the issues of commonality and typicality. Nevertheless, the Court agrees that Topic 1 should be limited to data security measures in place on the specific affected system(s), server(s), and/or dataset(s) at the time of the breach. Acadian will produce "the

policies identifying the categories of security measures applicable to that server." (Rec. Doc. 94, p. 4).

- **Topic 2** seeks the identity of third parties who designed, managed, or influenced Acadian's data security policies, as well as their roles and responsibilities. Acadian has provided the third parties' identities. Plaintiffs "ask only that the witness also be prepared to describe what service each vendor provided for those systems at the time of the attack." (Rec. Doc. 90, p. 21). The Court agrees that further information such as testimony detailing their roles and responsibilities is unhelpful to the question of certification.

- **Topic 3** seeks the name and location of the computer networks and systems involved in the breach. The Court finds that this information could conceivably bear on certification issues and poses no significant burden on Acadian, who maintains that the information is security-sensitive. The parties may address disclosure of confidential and proprietary information through a confidentiality agreement.

- **Topics 4, 5, and 8** seek information as to when, how, and by whom the data breach occurred and was discovered, which Acadian has or will provide. However, Acadian objects to providing information regarding its investigation, analyses, and responses and particularly objects to producing or discussing the forensic investigation by Arete, a company engaged by Acadian's outside

counsel, to investigate the breach. The Court agrees that information pertaining to Acadian's analyses and responses following the investigation, including any root cause analysis, is irrelevant to the certification analysis and possibly privileged. See *Cabezas v. Mr. Cooper Grp., Inc.,* No. 3:23-CV-2453-N, 2025 WL 3456577, at *2 (N.D. Tex. Dec. 2, 2025) denying motion to compel production of "all documents, communications, and results of internal or external assessments or audits (formal or informal) of Mr. Cooper's Data Security measures, and any cybersecurity audits and penetration testing and/or ethical hacking exercises conducted" as overly broad merits discovery. The Court declines to definitively determine at this certification stage whether the information sought is privileged, where the Court is not convinced the information would be helpful to certification inquiries. Determinations on privilege can be assessed during merits discovery. Insofar as Plaintiffs seek "the forensic analysis Acadian used to define the population," the Court finds that Acadian's method for determining whose PII was potentially compromised in the breach could be relevant to the certification determination to the extent that determination did not involve privileged communications. For privileged documents and communications, the parties may request "in camera" review.

- **Topics 9 and 10** seek the number of impacted individuals whose personal information was detected on the dark web after the breach. Acadian agreed to

provide pertinent information as it pertains to named Plaintiffs but objects to providing such information for unnamed individuals, because unnamed individuals must prove standing, which is not an issue as certification. The Court disagrees that the information sought has no conceivable bearing on certification. Information regarding individuals whose information was detected on the dark web after the breach may contribute to the core class prerequisites.

- **Topics 11, 12, and 13** seek information regarding Acadian's remedial measures and other actions taken in response to the data breach. Other than notification information (which Acadian has or will provide), information regarding remedial measures is not relevant to the issues of class certification. *Cabezas,* 2025 WL 3456577, at *4, denying motion to compel "documents and communications relating to any Data Security changes Mr. Cooper implemented or planned to implement as a result of the Ransom Attack to its systems, devices, and software to remedy vulnerabilities," because "any implemented or planned changes to data security is a merits question because Cabezas seeks this to addresses whether Mr. Cooper complied with industry standards." Further, requiring Acadian's representative to testify on these issues at this stage poses an unreasonable burden[1] unlikely to lead to information necessary to certification and further calls

---

1 See Rec. Doc. 88-7, ¶4.

for potentially privileged information the Court is unwilling to address without further evidence at this stage.

- **Topic 15** seeks all known information security related incidents where PII possessed by Acadian was accessed without authorization. Acadian argues this request is overly broad in that it is unlimited by type of incident, magnitude, or timeframe, and conceivably calls for testimony regarding its thousands of annual security alerts and tickets, which would take Acadian personnel approximately six to twelve months to review. (Rec. Doc. 88-7). The Court agrees the information sought—beyond which Acadian has agreed to provide—is overly broad and not helpful to the certification issue. *Cabezas*, 2025 WL 3456577, at *3 ("[K]nowledge of data breaches in the financial or mortgage industries prior to the Ransom Attack and its knowledge of any lawsuits against Mr. Cooper for the Ransom Attack or another security incident…[is] not necessary or helpful in determining class certification issues.")
- **Topic 16** seeks information regarding Acadian's organizational and ownership structure, which Plaintiffs have narrowed to departments and divisions with functions relating to IT security. Acadian provided organizational information and identification of IT security in responses to discovery, but objects to its corporate representative having to testify regarding the numerous relationships among the entities. The Court agrees that detailed testimony regarding Acadian's

IT security structure is not relevant to the certification issues but also agrees with Plaintiffs' position that assessment of commonality, typicality, and potential subclasses could depend upon which entity held which class members' personal information. Acadian responds that "Acadian is the only defendant; the affected data resided in tables on its server; the information was collected by Acadian in the ordinary course of its operations; and Acadian has produced its organizational documents." (Rec. Doc. 94, p. 9). Because Acadian has provided sufficient information for Plaintiffs to assess class prerequisites, the Court finds Topic 16 shall, at this stage, be limited to testimony regarding basic organizational structure of only the pertinent entity and division(s) involved in the breach incident.

Signed at Lafayette, Louisiana on this 3rd day of November, 2026.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE